Goodwin *v.* Keney.

———————◆◆◆———————

LEVI GOODWIN *vs.* HENRY KENEY AND ANOTHER.

*J* in 1846 mortgaged to *A* an undivided fifth of certain real estate of which *A* already owned three-fifths. *A* took possession of the interest mortgaged and remained in possession till her death in 1866. Prior to 1862 she had acquired *J's* equity of redemption, and in that year made a will devising the property to *G* for life and after his death to *K*. In 1863 she assigned the mortgage for a valuable consideration to the petitioner. She died in 1866, and *G* entered into possession under her devise and was in occupation of it when in 1878 the petitioner brought a bill against *G* and *K* for the foreclosure of the mortgage. Held—

1. That equity would not regard the mortgage interest and the equity of redemption as merged in one estate where the interest of *A* required that they be kept separate, or there was evidence of her intent to keep them so.

2. That *A's* assignment of the mortgage to the petitioner was sufficient evidence of such an intent.

Goodwin *v.* Keney.

3. That it made no difference that this intent was not declared, or that it did not exist, at the time the two interests became vested in her.
4. That the possession of the mortgaged property by *A* for over fifteen years before the assignment, while it might cut off the mortgagor from his right of redemption, could not affect her right of foreclosure, nor that of the petitioner, who as assignee took all her rights.
5. That a fifteen years adverse possession after the assignment, by *A* during her life and by her devisees afterwards, would bar the right of the petitioner to foreclose.
A bill to foreclose and for possession was brought by the petitioner within the fifteen years against *G* who had the life interest and *K* who had the reversion, of which service was made on *K* before the expiration of the fifteen years and on *G* after.   Whether a foreclosure could be decreed against *G*:   *Quære.*
It was objected that the bill did not show that there had been no rents and profits received by *A* while in possession as mortgagee, nor that there would be anything due on the mortgage if the rents and profits were applied.. Held that the bill sufficiently averred this in the averment that the mortgage note had never been paid, but was still due, with the interest thereon.

BILL for the foreclosure of a mortgage and for possession of the mortgaged premises; brought to the Superior Court in Hartford County.

The petition alleged that on the 5th of November, 1846, John K. Goodman of the city of New York made a mortgage to Abigail Goodman of Hartford, to secure a note of $375, of certain real estate situated in the city of Hartford, and which was described in the mortgage as "all the right, title and interest (being one undivided fifth part) of the said John K. Goodman in and to a certain piece of land lying in said city of Hartford, and bounded" &c. [giving the boundaries.]   That the said Abigail Goodman, who then owned and till her death continued to own three-fifths of the same property, immediately upon the execution of the mortgage entered into the possession of the mortgaged premises, and continued in possession until her death in 1866; and her devisees, hereinafter named, and those claiming title under her, have been in possession thereof from her death until the present time. That on the 3d day of June, 1863, the said Abigail, for a good and valuable consideration, sold, assigned and transferred to the petitioner the aforesaid mortgage, and the debt secured thereby, and endorsed and delivered the mortgage note to the petitioner, who is now the lawful owner and holder of the same.   That the said Abigail, having theretofore

acquired from the said John K. Goodman the full legal title to the mortgaged premises, in November, 1862, by her last will and testament of that date devised the same to Henry Keney of said Hartford, in trust for Albert W. Goodwin during the life of the said Albert, who now holds the same, subject to said mortgage; and that the remainder of said estate, after the death of said Albert, was by said will devised to Elizabeth G. Kingsbury, now of the city of Paris in France, and to her heirs and assigns forever. And that said mortgage note has never been paid, but is still due, with the interest thereon; and that the petitioner is entitled to the possession of said mortgaged premises, and is without adequate remedy at law. The petition then prayed for a foreclosure against the said Henry Keney, as trustee, and the said Elizabeth G. Kingsbury, and that the respondents surrender to the petitioner the quiet and peaceable possession of the premises, and that execution in ejectment issue for the same.

The only parties cited in as respondents were Henry Keney of the city of Hartford, and Elizabeth G. Kingsbury of the city of Paris in France.

The petition was dated May 30th, 1878. On that day the counsel for the petitioner obtained an order from the clerk of the Superior Court for a service of the petition upon Elizabeth G. Kingsbury, by the depositing of an attested copy of the petition, citation and order of notice in the post-office at Hartford directed to her at Paris in France, on or before the first day of June next following. The return of the officer showed that he mailed the copy as required on the first day of June, 1878, and that he left a copy in service with the respondent Keney at Hartford on the 8th day of July, 1878.

The respondents demurred to the petition, and the court (*Beardsley, J.*,) held it insufficient and dismissed it. The petitioner thereupon filed a motion in error and brought the record before this court.

*C. E. Perkins* and *C. Lounsbury*, for the plaintiff in error.

1. Previous to the assignment of the mortgage by Abigail Goodman to the petitioner, it is found that she had acquired

the mortgagor's equity of redemption, giving her the full legal and equitable title to the mortgaged premises. It is claimed on the other side that by this union of titles the mortgage was merged in the legal title and the mortgage debt extinguished. But if Abigail Goodman were still living she would not be permitted to deny the validity, either of the assignment itself, or of the mortgage so assigned. *Coe* v. *Talcott*, 5 Day, 92; *Hoyt* v. *Dimon*, id., 483; *Stow* v. *Wyse*, 7 Conn., 214; *Rich* v. *Atwater*, 16 id., 415; *Washington Ins. Co.* v. *Colton*, 26 id., 50. The mortgagee herself being estopped to deny the mortgage, as well as her assignment of it, all who claim under her, as heirs, devisees or assigns, privies in estate, are likewise estopped in the same manner and to the same extent. *Stow* v. *Wyse*, 7 Conn., 220; *Dudley* v. *Cadwell*, 19 id., 226. And this estoppel attaches equally whether created by deed, or by the words and acts of the party. *Bushnell* v. *Church*, 15 Conn., 422; *East Haddam Bank* v. *Shailer*, 20 id., 21; *Roe* v. *Jerome*, 18 id., 153; *Preston* v. *Mann*, 25 id., 128. But on the facts disclosed in the bill there can be no merger. A court of equity will always prevent a merger to preserve any beneficial interest of the party, to carry out his intent, or to promote the purposes of justice. *Lockwood* v. *Sturdevant*, 6 Conn., 390; *Donalds* v. *Plumb*, 8 id., 453; *Bassett* v. *Mason*, 18 id., 136; *Mallory* v. *Hitchcock*, 29 id., 135; *Gregory* v. *Savage*, 32 id., 264. The intent of the mortgagee to keep the two titles distinct is evident from the fact that, after acquiring the equity, she sold and assigned the mortgage, as a valid subsisting mortgage, to the petitioner. And this assignment was made after the execution of the will, showing her intent that her assignee and not her devisee should have the amount of the mortgage debt. Whether merger or not depends upon the express or implied intention of the party in whom the estates unite. And this intention is to be gathered from all the circumstances of the transaction; the acts of the parties, contemporaneous and subsequent to the union of titles, and their interest. *Wilhelmi* v. *Leonard*, 13 Iowa, 337; *Walker* v. *Barker*, 26 Verm., 715; *Forbes* v. *Moffat*, 18 Ves. Jun., 389. An assignment of a mortgage, after the union of

titles, was held to be conclusive evidence of an intention to keep them distinct, even against the previous declarations of the party that he was the absolute owner of the premises and his offer to sell them as such. *James* v. *Morey*, 2 Cowen, 285, 287, 309. Until the assignment the mortgagee was at liberty to treat the mortgage as merged or not at his pleasure, but whenever there is a conveyance or assignment, and not before, that intention becomes fixed and unchangeable. A conveyance of the premises in fee would be conclusive evidence of an intent to treat them as merged; and an assignment of the mortgage would in like manner be conclusive evidence of an intent to prevent a merger. *Kellogg* v. *Ames*, 41 N. York, 263. The intention, therefore, of keeping the two estates distinct appears to be indisputable.

2. It is claimed on the other side that the foreclosure is barred by lapse of time, and *Haskell* v. *Bailey*, 22 Conn., 569, is relied on in support of this position. But the facts of that case are totally different from those of this. Here the mortgagee was in possession for all the time claimed to operate as a bar. Her possession could not affect her own rights as a mortgagee. And on the assignment of the mortgage to the petitioner he took all the rights which she had. After the assignment the possession of Abigail Goodman till her death and that of her devisees after her death might be regarded as adverse, but the fifteen years required to gain a title by such possession did not expire until the 3d day of June, 1878, and before that time this suit was brought, and though service was not made on one of the respondents until a few days after that date yet it was made on the other before it, and thus the suit was legally commenced before the expiration of the fifteen years.

*E. Goodman* and *F. H. Parker*, for the defendants in error.

1. There is no allegation that the petitioner has any subsisting interest in the property originally mortgaged to his assignor. The allegation is that John K. Goodman mortgaged "all his right, title and interest, of which he was then well seized and possessed." Whether it was an estate for life or

by curtesy, or a term of years, the bill does not disclose. The court cannot presume that his estate was one which has continued to the present time. No decree can be passed unless it appears in the bill that the mortgagee took an estate which is still subsisting. *Williams* v. *Robinson*, 16 Conn., 522; *Wooden* v. *Haviland*, 18 id., 107; *Hill* v. *Meeker*, 23 id., 594.

2. The petitioner's assignor is alleged to have entered into possession of the mortgaged premises immediately upon the execution of the mortgage, and to have remained therein continuously until the assignment. And yet the bill contains no offer to account for the rents and profits; and no allegation that after such accounting a balance will remain due on the notes. It is not alleged that there were no rents and profits and it is to be presumed that there were.

3. It appears from the bill that prior to November, 1862, and many months prior to the assignment, the mortgagee, Abigail Goodman, had purchased the equitable title of the mortgagor. The two titles then were merged in the mortgagee and the mortgage was extinguished. The bill in fact directly alleges a merger, "the said Abigail Goodman having theretofore acquired from the said John K. Goodman the full legal title to said mortgaged premises." What is a "full legal title?" We submit that in this case there is but one answer, a title free from all conditions and equities in John K. Goodman. 2 Story Eq. Jur., § 1035 *c;* *Lockwood* v. *Sturdevant*, 6 Conn., 383, 390; *Gregory* v. *Savage*, 32 id., 264; *Gardner* v. *Astor*, 3 Johns. Ch., 55; *Tyrwhitt* v. *Tyrwhitt*, 32 Beav., 249. The petitioner's assignor is alleged to have entered upon the mortgaged premises in November, 1846, and to have remained in continuous possession till her death in 1866. The assignment is alleged to have been on June 3d, 1863. Abigail Goodman had then been in possession for nearly seventeen years. It is not alleged that she ever recognized any title in the mortgagor after she took possession. By law fifteen years' possession by the mortgagee cuts off the equity of the mortgagor, and vests the title absolutely in the mortgagee. *Jarvis* v. *Woodruff*, 22 Conn., 551; *Haskell* v. *Bailey*, id., 574; 2 Story Eq. Jur., § 1028 *a.* The equitable title by lapse of

time merely had merged in the legal, and the mortgage was extinguished. There is no allegation in the bill of matter rebutting the legal presumption of a merger arising from the union of the legal and equitable estates in the same person; nothing showing any interest of the mortgagee or intent on her part, contemporaneous with the union of the two estates, to keep them apart. It is no answer to say that the respondents as devisees of the petitioner's assignor are estopped from availing themselves of the merger. The respondents merely maintain that the bill is insufficient because it shows a merger prior to the assignment to the petitioner. By demurring the respondents put themselves upon the weakness of the petitioner's case as stated in his petition. Again, an estoppel never goes to matters of law or opinion, but only to matters of fact. Merger is an operation of law. Abigail Goodman's assignment as alleged in the bill can only be construed as a mere expression of opinion on a matter of law and works no estoppel. Bigelow on Estoppel, 431, 438; *Brewster* v. *Striker*, 2 Comst., 41. The petitioner had notice of the actual state of the facts at the time of the assignment. He could not have been deceived. The merger and extinguishment of the mortgage was then patent on the face of the very papers which evidenced his claim, and on the public land records, of which he is presumed to have knowledge. Bigelow on Estoppel, 437, 467; *Danforth* v. *Adams*, 29 Conn., 111.

4. Payment of a mortgage is presumed after the lapse of fifteen years; and also from a conveyance to the mortgagee of the equity of redemption. *Findlay* v. *Hosmer*, 2 Conn., 354. The bill discloses both of these grounds of presumption of payment, and nothing by way of rebuttal.

Loomis, J. This is a petition for foreclosure which is claimed to be insufficient upon five distinct grounds, viz:

1st. That there is no allegation that the petitioner has any subsisting interest in the premises to entitle him to a decree of foreclosure.

2d. That the mortgage has been extinguished by merger in the legal estate.

Goodwin *v.* Keney.

3d.   That the original mortgagee was in possession over twenty years, and there is no offer to account in the bill and no showing that upon such accounting anything would be due on the mortgage.

4th.   That the possession of the mortgagee for more than fifteen years extinguished the equity of redemption and vested the title absolutely in the mortgagee.

5th.   That the right acquired by the petitioner by virtue of the assignment of the mortgage to him is barred by the statute of limitations.

In support of the first claim it is said that the petition describes the mortgage by virtue of which the plaintiff claims title as merely conveying the right, title and interest of John K. Goodman in the land described, of which he was then seized and possessed, without showing what that interest was.

In making this claim the respondents overlook an important allegation which immediately follows, defining the interest conveyed as "one undivided fifth part" of the premises described.   The conveyance is absolute of a fifth part and presumably conveys a fee.   The phrase "all my right, title and interest" applies only to the entire property, and might have been omitted, leaving the words of conveyance to apply directly and immediately to the fifth part, and the meaning would have been the same.   And besides, the instrument of conveyance is referred to in the petition and described as "a good and valid mortgage deed, with the usual covenants of warranty and seizin."

The next question is, whether there was a merger of the legal and equitable titles in Abigail Goodman which extinguished the mortgage.

It appears that both titles vested in Abigail, the mortgagee, and if nothing more was shown we should presume a merger. But courts of equity will always keep the estates separate and uphold the mortgage, when it is required by the justice of the case or the intent of the parties.   *Stanton* v. *Thompson*, 49 N. Hamp., 272; *Bell* v. *Woodward*, 34 N. Hamp., 90; *Lockwood* v. *Sturdevant*, 6 Conn., 373; *Donalds* v. *Plumb*, 8 Conn., 447; *Bassett* v. *Mason*, 18 Conn., 131; *Mallory* v. *Hitchcock*,

29 Conn., 250; *Delaware & Hudson Canal Co.* v. *Bonnell*, 46 Conn., 10.

In the case at bar a merger should be prevented because both the justice of the case and the intention of the mortgagee alike require it.   The petitioner purchased the mortgage for a valuable consideration from the mortgagee herself, while the respondents are merely recipients of her bounty, taking the remainder of the estate by her will, and holding it, as the petition avers, "subject to the mortgage."   Their position in equity can be no better than that of their devisor, and it must be inferior to that of the petitioner.

In addition to the justice of the case the facts alleged in the petition furnish the most cogent evidence that the mortgagee's intention was to keep the estates separate.   She not only severed the two titles, but put them as wide asunder as possible; devising the fee to the respondents, and selling and conveying the mortgage to the petitioner.

But the respondents insist that the merger was complete the instant the two estates vested in Abigail, and that evidence of her intention to prevent a merger, to be effectual, must be contemporaneous with the union of the two estates.   This proposition is neither supported by good reason nor by good authorities.

In *James* v. *Morey*, 2 Cowen, 248, the fee and the mortgage interest united in one Wattles, a mortgagee, who soon after verbally declared himself to be the absolute owner, and then after the lapse of several months sold his interest in the mortgage, and yet the last mentioned act as evidencing his intention prevailed to prevent a merger.   Woodworth, J., in giving the opinion, said:—"Until he made a disposition of the property and until some person acquired an interest, he was at perfect liberty to consider the mortgage merged or not as might be most beneficial.   If the question is to be decided by intent, express or implied, when does it become fixed and unchangeable?   Certainly not until some one acquires an interest, and thereby obtains a right to draw it in question. It would be novel in principle, and I apprehend without precedent in any book of authority, that a stranger should

urge—You once declared the mortgage was merged, and although at the time it was indifferent to all the world in what manner you treated it, you are bound by that election."

In *Forbes* v. *Moffat*, 18 Ves. Jun., 389, the acts of the party were considered and examined for a series of years, and up to the time of his death, a period of ten years, for some conclusive evidence of intention, but not finding these acts and declarations decisive, the case finally turned on the legal presumption of his intention that the charge should not merge because it was for his interest that it should not.

The only authority that we can find which seems at all to support the claim of the respondents is a passing remark of the Chancellor in giving the opinion in *Starr* v. *Ellis*, 6 John. Ch., 393, that "unless some beneficial interest be shown to require the charge to be kept up, or the intention to keep up the charge be immediately and duly declared, it shall merge." But in *James* v. *Morey*, supra, in a very able and exhaustive review of the authorities this is shown not to be good law. The question of merger was not carefully considered, as it was not necessary. The case turned on the fact that it was a fraudulent assignment from a father to his son. Sutherland, J., on pages 306–7, says:—"To establish the rule that the intention of the party shall be immediately declared or the law shall declare it for him, would be virtually to take from him the privilege of election. How is he to make his intention known except by his acts in relation to the property which is the subject of the charge? Is not a reasonable time then to be allowed him? Is he to be compelled immediately to assign the charge if he intends to keep it distinct? or to sell the fee if he intends the charge shall merge? If the law gives him the privilege of election, it will give him a reasonable time within which to make it. This appears to me to be the good sense of the rule, and it is clearly sanctioned by the authorities to which I have adverted, particularly by the case of *Forbes* v. *Moffatt*."

It being clear that there was no merger, it becomes unnecessary to consider the question of estoppel, which was discussed by counsel in this connection.

The third objection, that the petition contains no offer to account for rents and profits while the mortgagee was in possession, and does not show that on the accounting any thing would be due on the mortgage, is sufficiently answered, as a question of pleading, by the averment "that the mortgage note has never been paid, but is still due, with the interest thereon."

The fourth objection, that the possession by the mortgagee for more than fifteen years extinguished the equity of redemption, is founded on the case of *Haskell* v. *Bailey et al.*, 22 Conn., 569, in which it was held that where the mortgagor remains in possession over fifteen years without payment or any act recognizing the existence of the mortgage, the mortgagee or his representatives cannot sue for foreclosure."

But in the case at bar it was the mortgagee that was in possession, and no statute ran against her; the statute was in her favor, and she might have used it as against the mortgagor in order to complete or fortify her title; but she had an election to treat her title either as a fee or as a mortgage with an equity of redemption still subsisting. And, as we have seen, she did elect to keep the mortgage alive, recognized its continued existence, and sold it to the petitioner; and having done so, neither she nor her representatives, the respondents, can set up any bar against the petitioner's right of entry and foreclosure founded on her possession prior to the time the mortgage was assigned to him. And this brings us to the only remaining question.

Has the petitioner's right of entry and foreclosure, since the same were acquired, become barred by statute?

The mortgage is alleged to have been transferred to him June 3d, 1863. The fifteen years limitation (Gen. Statutes, p. 493, sec. 1,) would not expire until June 3d, 1878. The petition bears date May 30th, 1878, and on that day an order of notice to one of the respondents, Elizabeth G. Kingsbury, residing in Paris, France, was made by the clerk of the Superior Court, directing that notice be given her by depositing a copy of the petition, citation and order in the post-office, directed to her, on or before the 1st day of June, 1878, which

Goodwin *v.* Keney.

order was complied with as appears by the return of the constable.

It is clear therefore that the petitioner is not barred from proceeding against Elizabeth G. Kingsbury, to whom the fee of the land mortgaged was devised.

The question as to the other respondent is not so clear. The constable's return shows that service was made on Henry Keney, trustee for Albert W. Goodwin, to whom the life estate was devised, July 8th, 1878, which was after the fifteen years had expired. By the strict rules of limitation that obtain in courts of law this would be a bar, as to proceeding against the last mentioned respondent, and such will be the result here unless the facts that the petitioner had moved in the matter within the fifteen years, and had actually commenced his legal proceedings to the extent mentioned, will prevent the bar in equity.

As this question was not particularly discussed, and has become of no practical importance in the present case, we prefer to leave it an open question for future consideration should it hereafter arise in any other case. During the argument it was conceded by counsel that since the decision in the court below, Goodwin, to whom the life estate was devised, has deceased; so that as to him there is no longer any equity to be foreclosed, and the entire estate, subject to the mortgage, has become vested in the other respondent.

There was error in the judgment complained of as to the respondent Elizabeth G. Kingsbury, and it is reversed.

In this opinion the other judges concurred.