DAVEY TREE EXPERT CO. et al. v. VAN BILLIARD et al.

(Circuit Court of Appeals, Third Circuit. December 18, 1919.)

No. 2487.

1. PATENTS ⬥⟹328—FOR PROCESS FOR TREATING WOUNDS IN TREES VALID AND INFRINGED.

The Davey patent, No. 890,968, for process of treating a bruise or wound in a tree, by cutting away dead wood and filling the cavity with cement in such manner that it should be self-draining, *held* valid, and also infringed.

2. PATENTS ⬥⟹328—FOR PROCESS FOR TREATING WOUNDS IN TREES VALID AND INFRINGED.

The Davey patent, No. 958,478, for process of reinforcing trunks of trees having cavities therein extending to the exterior and longitudinally of the trunk, by building up within the cavity a filling in sections one above another, is valid as to claims 1, 2, 3, 4, 5, 8, and 11 and infringed; claim 1, which was most general, not being too broad, in view of the fact that the patentee was a pioneer in the field.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Suit by the Davey Tree Expert Company and others against Rue J. Van Billiard and another. From a decree for complainants on condition (248 Fed. 718), complainants appeal. Modified.

See, also, 255 Fed. 781, —— C. C. A. ——.

Bakewell & Byrnes, of Pittsburgh, Pa. (William A. Schnader, of Philadelphia, Pa., and Clarence P. Byrnes, of Pittsburgh, Pa., of counsel), for appellants.

Arthur E. Paige, of Philadelphia, Pa., for appellees.

Before BUFFINGTON and WOOLLEY, Circuit Judges, and MORRIS, District Judge.

BUFFINGTON, Circuit Judge. In the court below the plaintiffs charged defendants with infringing two patents, viz. claims 3, 4, 6, and 7 of patent No. 890,968, granted June 16, 1908, to John Davey et al., for a process for treating and dressing a bruise or wound in the trunk or live branch of a live tree, and claims 1, 2, 3, 4, 5, 8, and 11 of patent No. 958,478, granted May 17, 1910, to Wellington E. Davey, for a process of reinforcing trees.

[1] Turning our attention first to the earlier patent, we note that the court below, in an opinion reported at 248 Fed. 718, held these claims valid and infringed, and from a decree so adjudging the defendant Van Billiard, took this appeal; his codefendant having suffered a decree pro confesso to be entered against him. After full hearing, we are of opinion the decree so adjudging was right.

The practice of cleaning out the dead wood, fungus, and other matter from trees, and filling such cleaned cavity with cement, is an old and well-recognized one. Generally, the result of such practice was to prevent further decay; but, where water accumulated behind it, the cement filler tended to cause decay more rapidly than would have

been the case had the cavity remained unfilled, for it is evident that thereby air and light were shut out, and hence the growth of fungus and deterioration were correspondingly rapid. To overcome this recognized evil, for which no one had suggested any remedy, the patent was intended.

As in the former art, the patentee carefully cleared out the cavity by removing all decayed matter, and cleaning and, if necessary, cutting down to the live wood; but instead of stopping at the live wood, as the old art had done, and filling this live wood cavity with cement, the patentee took an additional step, quite at variance with former practice—which was to stop when live wood was reached—and cut into the live wood itself around the entire sides and top of the cavity, so as to form a live-wood trench, and thereby, when the cement was poured into the cavity, form in this trench cut a cement dam or barrier, which not only prevented water from going any farther, but carried off such trapped water down to the foot of the cavity, where it passed out to the surface. This novel practice overcame a recognized, but unsolved, evil, and had proved simple and effective. The question of whether it was inventive was decided in the affirmative by the Patent Office, and the plaintiff has the prima facies which arise from such grant. The experienced District Judge of the District of Delaware, who, by assignment, heard the case below, came to the same conclusion. In a suit in the District of New Jersey, involving the same patent, another experienced District Judge came to a like conclusion. Little, if anything, can be added, or, indeed, need be added, to what this latter judge has so convincingly said in his opinion reported in Davey v. Cutter, 197 Fed. 180:

"The testimony establishes that this step accomplished the object sought, and that it was promptly recognized and adopted by foresters and others in the business of caring for trees, as an effective means of trapping and shedding the water before it reached the cavity. This watershed groove is not a mere duplication or extension of the idea of means disclosed in the enlargement of the cavity. Such enlargement is only for the purpose of removing the decayed wood and to hold in the filler. It could not prevent the trickling or seeping in of water at the outer edge of the cavity. The cutting of the groove is not to remove the decayed wood, and, though it aids in holding intact the filler, that is but incidental. Its purpose, as already stated, is to trap and shed the water ere it reaches the cavity, and is a decided advance on the art."

In accordance with their views, we also are of opinion that the claims in question involve invention and are valid. That they are infringed is also, under the proofs, clear; but in that connection we state that in the present cases the channel which we hold is an infringement is a groove cut into the live wood of the cavity, both sides of which groove are, and are cut into, live wood. No other form or position of groove is before us, or involved in our ruling—a statement we make lest our decision should be regarded as of broader scope than it is, or is meant to be.

[2] The second patent is addressed to another evil, which the cement filling of tree cavities brought to light, namely, where the cavities were large, and the swaying of the tree broke the cement filling,

and thereby permitted moisture to enter through cracks in the filler. This cracking the patentee avoided by the simple, but effective, preventive of building up a filler composed of sectional or cup joints, whereby the solid, unyielding cement column of the old art was replaced by a yielding section, which, like the ball and socket joint of an articulated structure, such as the human spine, was adapted to work as a joint and prevent cracking of the cement, when the inclosing tree swayed under the wind.

Not only do we find no such practice in the prior art, but we find no conception of a jointed, sectional structure functionally designed to yield to the swaying of the trees. So far as any disclosures or practices of the prior art of tree treatment are concerned, that art simply accepted the give of the tree and its effect on a rigid, unyielding cement column as a necessary evil, and made no effort to overcome that evil. The field was therefore an open one, and the patentee, when he entered it, was not only the first to suggest a simple and effective means of preventing the cracking of cement cores, but was the first to even suggest to the tree-planting art that the prevention of cracking was a field of effort. The proofs satisfy us that the patent in question was a very substantial contribution to forestry. Its success is as great as its simplicity is marked, and we disagree with the court that the first claim in the patent was too broad. It described in simple, inclusive terms what the patent first disclosed, viz. :

"An improved process of reinforcing a tree having a cavity which is formed in the trunk of the tree and extends to the exterior and longitudinally of the trunk, said process comprising a building up within the cavity of a filling in sections one above another."

And, there being no prior art or practice in that field, the patentee was entitled to a claim as broad as his disclosure and contribution to the art. Finding this claim valid, and agreeing with the court below that the other claims in issue were valid, it follows that the defendant, who was a former employé of the plaintiff company and continued to practice the patented process after he left its employ, must be adjudged an infringer.

We accordingly hold the claims of the two patents in question are valid and infringed, and the decree of the court below will be modified and restated, so as to so adjudge.